**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                  Case No. 15-20336

DERAL DORSEY,

      Defendant.

                                          /

**ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS ILLEGALLY SEIZED
EVIDENCE AND STATEMENTS"**

Defendant was charged with being a felon in possession of firearm in violation of 18 U.S.C. § 922(g)(1) after a search of his home on Westpoint Street in Taylor, Michigan uncovered five guns and other illegal contraband. Before the court is Defendant's Motion to Suppress Illegally Seized Evidence And Statements, filed on August 7, 2015. (Dkt. # 17.) On September 9, 2015, the Government responded. (Dkt. # 20.) For the reasons stated below, the court will deny Defendant's motion.

**I. BACKGROUND**

On November 20, 2014, Detective Czopek, a Michigan State Police Downriver Area Narcotics Organization ("DRANO") officer, spoke to an informant who stated that he could go to the residence on Westpoint Street and purchase heroin. (Dkt. # 17-2, Pg. ID 61.) On that same day, Czopek met with the informant at a prearranged location, searched his car for money, weapons, and contraband and issued him prerecorded funds with which to make a controlled purchase. DRANO officers established and maintained surveillance on the informant as he drove to the Westpoint residence, entered the residence, left the residence after the purchase, and drove back to the prearranged meeting location. The officers ensured that he made no stops on the way to, or coming from, the house. (*Id.* at 61-62.) At the meeting location, the informant

stated he had exchanged the prerecorded funds for heroin and identified Defendant from photographs provided to him. The informant gave Czopek the substance he purchased, which a field test confirmed was in fact heroin. Czopek and his DRANO team repeated the same procedure on December 2, 2014. They searched the informant before the controlled purchase, surveilled the informant while entering and leaving the residence, and met with the informant afterward to confirm that he purchased heroin. (*Id.*)

On December 4, 2014, Czopek prepared and swore to an affidavit before a magistrate judge and obtained a warrant. (Dkt. # 21-1, Pg. ID 98.) That same day, at four o'clock in the afternoon the search was executed. (Dkt. # 21-2, Pg. ID 100.) Defendant Deral Dorsey was detained during the search at the front of the residence in the driveway. Defendant was informed of his Miranda rights and thereafter made various incriminating statements. (*Id.* at 101.) During the course of the search, the search team seized five guns from the residence along with other items. (*Id.* at 21-2.)

## II. DISCUSSION

### A. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists "when there is a 'fair probability' . . . that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 859 (6th Cir. 2003) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "In other words, a magistrate need only find 'reasonable grounds for belief' that evidence will be found in order to justify the issuance of a search warrant." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Affidavits upon which probable cause is founded

"must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). "Search warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny." Thomas, 605 F.3d at 307 (citing *Gates*, 462 U.S. at 239).

Defendant lodges eight specific complaints pertaining to the sufficiency of the affidavit, which all amount to the general complaint that the warrant was not supported by probable cause. (Def.'s Mem. 5.) The specific complaints are as follows:

> (1) there's no indication that the informant(s) is credible or reliable; (2) the affiant does not state that there is reason to believe that the informant is credible or reliable; (3) the affiant fails to aver that there is probable cause to search the premises; (4) the averment that Mr. Dorsey was "registered" to the address based upon a LEIN inquiry is contradicted by the LEIN report which does not support this statement; (5) there's no indication drugs were seen or known to have been stored at the location; (6) there was no representation Mr. Dorsey was a suspected or known drug trafficker or that the location had been previously associated with drug trafficking; (7) the police merely corroborated readily accessible public information about Mr. Dorsey; and (8) merely observed the comings and goings of an unknown informant who may have secreted drugs in the location for his own nefarious purposes.

(*Id.*)

Defendant fails to recognize that an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). While it is true that the Detective Czopek did not attest to prior experience with the confidential informant, or aver that he was confident in the informant's reliability because he had received accurate information from him in the past, "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information." *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000). In this case, the independent corroboration came in the form of two controlled purchases. The informant told Detective Czopek that drugs were being sold at the Westpoint residence. To verify this information, Czopek conducted two controlled purchases, each time searching the

3

informant and his car for money, weapons, and contraband beforehand. (Dkt. # 21-1, Pg. ID 95, 96.) Additionally, Czopek surveilled the informant while he drove to and entered the residence, and continued to observe him as he left the residence and drove back to the predetermined meeting place, ensuring that he did not make any stops along the way.

It is true, as Defendant argues, that there is no per se rule establishing probable cause where there has been a controlled purchase of narcotics. (Def.'s Mem. 7 (citing *United States v. Khounsavanh*, 113 F.3d 279, 285 (1st Cir. 1997).) Indeed the Supreme Court has continually rejected per se rules in the Fourth Amendment context, noting that determining Fourth Amendment reasonableness requires a "finely tuned approach" and that each scenario should be evaluated "on its own facts and circumstances." *E.g., Missouri v. McNeely*, 133 S.Ct. 1552, 1559 (2013). But to say that there is no per se rule does not establish that controlled purchases do not frequently establish probable cause. To the contrary, the Sixth Circuit has often found that controlled purchases, when executed properly, as in this case, do establish probable cause. *See e.g.*, *United States v. Coffee*, 434 F.3d 887, 894-95 (6th Cir. 2006); *Unites States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003). *Coffee* is similar to the instant case because the affiant did not expressly vouch for the credibility or reliability of the informant. The police did however, like Czopek, conduct a controlled purchase and took measures to ensure that the informant did not secret drugs into the location in order to frame the subject of the investigation. While in *Coffee* the police listened to the single controlled purchase via a monitoring device, Czopek, unlike the other cases, conducted two controlled purchases, lessening the likelihood that the informant was attempting to dupe the police. Given the totality of the circumstances, in particular the two monitored controlled purchases, the court finds that the warrant was supported by probable cause.

In his motion, Defendant also argues that the affidavit is incorrect where it states, "LEIN inquiry showed Deral Dewayne Dorsey [redacted] registered to [redacted] Taylor, MI [redacted]." (Def.'s Mem. 5 (citing Dkt. # 17, Pg. ID 62).) Defendant claims that the LEIN report contradicts this statement. *Id.* It does appear that the LEIN report attached to Defendants motion is silent as to his address, and so that report does not support the statement, though the court cannot go as far as to say it contradicts the affidavit. But even if Defendant is right, this error would make no difference, as it is essentially immaterial. That Defendant lives at, owns, frequents, or is "registered to" the address is not essential to a finding of probable cause that drugs were present in the house. The search warrant was issued to authorize a search of the house, and the warrant itself did not name Deral Dorsey as a particular person to be searched. True, the warrant allowed for the search of "all persons present, arriving, or departing" the residence during execution of the search, but this is due to their presence at the house for which there was probable cause to believe drugs were present.

Even assuming, arguendo, that Defendant was not "registered to" the residence and that the misrepresentation was intentionally false or made with reckless disregard for the truth, a warrant is only voided and the fruits of the search suppressed if "setting aside the affidavit's false material . . . the remaining content of the affidavit is insufficient to establish probable cause." *United States v. Ayen*, 997 F.2d 1150 (6th Cir. 1993) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). The court finds that the tip from the informant corroborated by two controlled purchases and the additional surveillance established probable cause independent of information about Defendant's connection to the house itself. While that sort of information might be relevant to the ultimate question of Defendant's guilt or innocence, an affiant does not need to establish probable cause for the crime with which the defendant is ultimately charged.

Thus, the potential discrepancy with respect to Defendant's relationship to the house does not affect the validity of the warrant.

The court therefore finds that there was probable cause to believe that drugs were present at the Westpoint residence.

### B. Procedural Defects

In his motion, Defendant also argues that the warrant should be invalidated because it (1) did not specify a time period within which to execute the search, (2) did not state whether a nighttime search was authorized, (3) and did not order the police to leave a copy of the warrant with the owner of the premises. (Def.'s Mot. 3.) First, the court notes that the search was executed during daytime, at four o'clock in the afternoon on the day the warrant was issued by the magistrate judge. (Dkt. # 21-2, Pg. ID 100.) Also, the warrant *did* instruct the police to "[l]eave a copy of this warrant with affidavit attached and a tabulation (a written inventory) of all property taken with the person from whom the property was taken or at the premises." (*Id.* at 98.) Thus, Defendant's contentions are either wrong or the defects did not affect Defendant in any way.

Moreover, the Sixth Circuit has consistently held that "although the procedural steps enumerated in Rule 41[][1] are important and should not be disregarded, they are ministerial and '[a]bsent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search." *Frisby v. United States*, 79 F.3d 29 (6th Cir. 1996) (citing *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971)). As Defendant was not prejudiced by the alleged procedural irregularities, the court will not invalidate the warrant or suppress the fruits of the search.

---

[1]Rule 41 has been substantially amended since the decisions in *Frisby* and *McKenzie* such that the subdivisions in earlier versions of the Rule cited in those cases no longer correspond to the current Rule 41.

## B. Exclusionary Rule

Finally, even if the court were to accept Defendant's argument that the warrant was invalid, the court finds that the exclusionary rule would not suppress the evidence obtained. The Fourth Amendment exclusionary rule does not apply where law enforcement acted in good faith and reasonably relied on an invalid search warrant. The issue is "whether a reasonably trained police officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Leon*, 468 U.S. 897, 922 n.4 (1984).

> To help reviewing courts properly answer this question, the Court identified four specific situations in which an officer's reliance on a subsequently invalidated warrant cannot be considered objectively reasonable: 1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; 2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; 3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and 4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid.

*Thomas*, 605 F.3d at 311.

To begin with, it is not at all clear that Czopek's contention in the affidavit that Defendant was "registered to" the residence was actually false. From the information provided, the court can determine only that the LEIN report produced to Defendant does not support that statement. Additionally, Defendant withdrew his request for a *Franks* hearing, (Dkt. # 19), and thus no evidence has been presented to convince the court of the statement's falsity or that Czopek knew (or was reckless in not knowing) it was false. Furthermore, the affidavit is based on much more than just the one alleged misrepresentation. Thus, the *Leon* exception would apply because of the other portions of the affidavit that independently establish probable cause. These other indicia of probable cause make any officer's reliance on the warrant and affidavit objectively reasonable. And finally, Defendant submits no evidence suggesting the judicial officer acted as a rubber stamp, as required. *See Thomas*, 605 F.3d at 311. Accordingly, the

officers here acted in good faith, and the exclusionary rule would not apply even if the

search warrant was not supported by probable cause.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's Motion to

Suppress Evidence and Statements (Dkt. # 17) is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 29, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, October 29, 2015, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\15-20336. DORSEY.denysuppress.smq.wpd